No. 62,249

DAVID DARLING, *et al., Appellees/Cross-Appellants*, v. KANSAS WATER OFFICE, *Appellant/Cross-Appellees*, and DAVID DARLING, *et al., Appellees/Cross-Appellants*, v. JOSEPH F. HARKINS, *et al., Appellants/Cross-Appellees*.

(774 P.2d 941)

Opinion filed May 26, 1989.

*David D. Plinsky*, assistant attorney general, argued the cause, and *Robert T. Stephan*, attorney general, was with him on the briefs for appellants/cross-appellees.

*Patricia E. Riley*, of Weathers & Riley, of Topeka, argued the cause, and *Wesley A. Weathers*, of the same firm, was with her on the briefs for appellees/cross-appellants.

*Linda J. Fund*, staff attorney, was on the brief *amicus curiae* for the Kansas Department of Administration.

The opinion of the court was delivered by

McFARLAND, J.: Plaintiffs herein were classified employees of the Kansas Water Office (KWO). In 1984, the Kansas Legislature enacted Senate Bill No. 501 (L. 1984, ch. 285), which changed plaintiffs' jobs from being in the classified service of the Kansas Civil Service Act, K.S.A. 75-2925 *et seq.*, to being unclassified and directed their termination. Plaintiffs were terminated and appealed their terminations to the Civil Service Board, which held it had no jurisdiction as plaintiffs were no longer classified employees. Plaintiffs appealed the Board's action to the district court (Case No. 84-CV-876) and filed a separate action against

Joseph F. Harkins, as Director of the Kansas Water Office, the State of Kansas, and the Kansas Water Office (Case No. 84-CV-1212). The district court consolidated the two actions. Summary judgment was granted in favor of plaintiffs with the court holding the statutes involved were unconstitutional (K.S.A. 74-2614 and 74-2614a) and directing that plaintiffs be reinstated with back pay. Defendants appeal from said determination and plaintiffs cross-appeal from the district court's denial of their request for attorney fees.

Some background information is necessary to understand the extraordinary action taken by the legislature herein. The KWO was under pressure to develop a state water plan. The former director of the KWO was asked to resign and defendant Harkins was appointed to the position in 1982. Harkins' primary responsibility was the preparation of the state water plan. As time passed and no water plan was produced, the pressure on Harkins increased. On January 24, 1984, Harkins appeared before a Senate committee. He advised the committee that having classified employees as the professional staff involved in the preparation of the plan limited his flexibility and hindered preparation of the water plan. In response thereto, Senate Bill No. 501 was enacted. Section 1 of the bill amended existing K.S.A. 1983 Supp. 74-2614 as follows (changes are indicated by marked deletions and italics):

"K.S.A. 1983 Supp. 74-2614 is hereby amended to read as follows: 74-2614. The director of the Kansas water office, with the consent of the governor, may appoint and fix the compensation of such employees as deemed necessary to carry out the powers, duties and functions of the Kansas water office and the director of the Kansas water office. All such *clerical and financial management* employees shall be in the classified service of the Kansas civil service act *and all other employees shall be in the unclassified service of the Kansas civil service act.*"

New Section 2 of the bill, later codified as K.S.A. 74-2614a, provides:

"(a) All positions of officers and employees of the Kansas water office in the classified service of the Kansas civil service act, except clerical and financial management positions, are hereby abolished 30 days after the effective date of this act and all officers and employees serving in such positions are terminated from state service on such date.

"(b) On the effective date of this act, the director of the Kansas water office shall give notice in writing to all officers and employees terminated from state service pursuant to subsection (a) specifying the date of their termination.

"(c) Nothing in this section shall be construed to prohibit the director of the Kansas water office from appointing any officer or employee terminated from state service pursuant to subsection (a) to any position in the unclassified service of the Kansas civil service act. Any such officer or employee shall retain all retirement benefits and all rights of civil service which had accrued to or vested in such officer or employee immediately prior to the date of such officer's or employee's termination pursuant to subsection (a).

"(d) Any person employed in an unclassified technical or professional position pursuant to K.S.A. 1983 Supp. 74-2614, and amendments thereto, shall possess experience and educational training in and technical knowledge of hydrology, engineering, geology or water planning."

The bill became law on March 15, 1984. By letter dated March 15, 1984, the 17 KWO employees declassified by the bill, including plaintiffs herein, were notified by Director Harkins that they were terminated from state service effective April 14, 1984. Ten of the 17 were rehired into unclassified positions and retained their civil service rights as specified by K.S.A. 74-2614a. Plaintiffs Hess, Sheets, and Kostecki applied for and were denied new employment with the KWO in unclassified positions. Thus, all employees terminated by Senate Bill No. 501, except the six plaintiffs and one other person, were reappointed to unclassified positions at the KWO. In addition to the rehirings, KWO Director Harkins hired, by June 18, 1984, seven new employees into professional positions with the KWO. Thus, no new positions were created and none were deleted—the staff positions affected by the bill remained at 17.

As of March 15, 1984, plaintiffs' positions and work history with the KWO may be summarized as follows:

(1) David Darling had been employed by the State in classified service since 1968 and was employed by KWO as a Hydrologist IV.

(2) John Henderson had been employed by the State in classified service since 1970. He was employed by KWO as a Hydrologist V.

(3) Larry Hess had been employed by the State in classified service since 1970. He was employed in the KWO as a Hydrologist III.

(4) Donald Kostecki had been employed by the State in classified service since 1968. He was employed in the KWO as a Hydrologist IV.

(5) Clydeen Logan had been employed by the State in classified service since 1971. She was employed by KWO as an Engineering Technician II.

(6) Larry Sheets had been employed by the State in classified service since 1966. He was employed in the KWO as a Hydrologist III.

The case arises on a unique set of facts. A handful of employees in a specific state agency were singled out by the legislature to be stripped of their rights under the Kansas Civil Service Act and terminated. Any or all could be rehired by the agency with a grandfathering in of their prior rights under the Act. This action was taken as a convenience to the agency's director so that he could have greater flexibility in operating his office. No compelling need or emergency situation was given by anyone as a justification for the action. Harkins has indicated in his deposition that termination through the civil service procedure was difficult and time consuming, and that the statute was beneficial as it gave him the flexibility he desired.

The district court held that the 1984 amendment to K.S.A. 74-2614 and all of K.S.A. 74-2614a (codifications of Senate Bill No. 501) were constitutionally impermissible as being violative of plaintiffs' procedural and substantive due process rights and as a denial of equal protection.

Under the Kansas Civil Service Act, a permanent classified civil service employee is entitled to various procedural and substantive safeguards in the event of a dismissal, demotion, or suspension, including: (1) prior notice; (2) a written statement setting forth the reasons for the intended action; (3) an opportunity to respond in writing, in person, or both, to a representative of the appointing authority; (4) a responsive written decision by the appointing authority; and (5) the right to appeal from any adverse decision to the Civil Service Board for a full evidentiary hearing; and, thereafter, the right to an administrative appeal from any adverse decision to a state district court. See K.S.A. 1988 Supp. 75-2949.

Defendants concede that a classified state employee has a property right in continued employment cognizable under the Fourteenth Amendment to the United States Constitution, which provides:

"All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State

deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

Defendants contend, however, that Senate Bill No. 501 lawfully terminated that right in plaintiffs, and, thus, the same was not in existence when plaintiffs were terminated.

States are under no obligation to create property rights in their employees' employment through enactment of civil service legislation. However, once a state has elected to do so, due process rights attach.

In *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 541, 84 L. Ed. 2d 494, 105 S. Ct. 1487 (1985), it is stated:

" 'While the legislature may elect not to confer a property interest in [public] employment, it may not constitutionally authorize the deprivation of such an interest, once conferred, without appropriate procedural safeguards.' [Citations omitted.]" (Emphasis supplied.)

Before proceeding further, it should be emphasized that the case before us does not involve elimination of a state agency, reduction of positions authorized for a state agency, consolidation of two agencies into one, transfer of functions from one agency to another, or any other situation involving elimination of particular positions. Further, this action does not involve the State's right to declassify a position prospectively, effective only as to employees to be hired in the future. Had Senate Bill No. 501 declassified the positions without the mandatory terminations and grandfathering in, to existing employees, their civil service rights, the case herein would not be before us.

If the defendants' position is correct that the State can selectively declassify and terminate free of civil service requirements, then the whole concept of civil service is a sham. There is no real protection afforded by the civil service act. This may be likened to a university entering into a lifetime contract with a popular football coach and, after a losing season, declaring the coach legally dead.

Defendants further argue that due process was afforded by the legislative process. The plaintiffs could have appeared before the appropriate legislative committees and expressed their opposition to the proposed legislation. Redress for enactment of the legislation could only be at the ballot box. This is illogical in the framework of the facts herein. The district court adequately disposed of this contention as follows:

"As noted above, the terminations effected by SB 501 under Defendant Harkins' suggestions clearly did not meet due process standard as set out by the legislature in the state civil service laws. The situation in this case is unique as the statutory due process procedures most certainly were not drafted with legislative terminations in mind. Defendants argue that the legislative process by which SB 501 became law was sufficient to meet the constitutional procedural due process requirements, though the Defendants point to the fact that every citizen in the State of Kansas, Plaintiffs included, has notice of pending legislation and can voice an opinion before a committee considering the bill. So, Defendants conclude, 'all the process due under the circumstances was provided by the Kansas Legislature.' . . . . Defendants further contended that Plaintiffs' failure to avail themselves to the legislative process amounts to a waiver. And finally Defendants suggest that the employees who feel aggrieved by the statute or the procedure employed by the legislature should look for their remedy at the ballot box and not the court.

"The Court acknowledges that the contentions made by the Defendants might be appropriate if this was an ordinary piece of legislation. But SB 501 was not an ordinary piece of legislation, by any standard. The bill, urged by Defendant Harkins, specifically provides for the termination of seventeen employees within the KWO. The case support utilized by Defendants on this issue speak to 'generally-applicable legislation.' This bill was not generally applicable and provided instead for the loss of a constitutionally-recognized property interest by seventeen known and identifiable individuals.

"Procedural due process is a flexible concept designed to provide procedural protections relative to the circumstances of a particular situation. *Morrissey v. Brewer*, 408 U.S. 471, 481, 33 L. Ed. 2d 484, 92 S. Ct. 2593 (1972). There are three distinct factors to be considered in determining the specific procedures due. First is the private interest that will be affected by the action, second is the risk of erroneous deprivation of such interest through the process used and third, the probable value of additional or substitute procedural safeguards. *Mathews v. Eldridge*, 424 U.S. 319, 335, 47 L. Ed. 2d 18, 96 S. Ct. 893 (1976).

"Applying these factors to the present case, the Court finds the private interest was the right to continued employment absent dismissal for a merit-related cause. As to the risk of erroneous deprivation by the process used; *i.e.*, the legislative process, the Court finds such risk extremely high as the legislature presumably had no merit-related testimony regarding the employees they were terminating, and third as to alternative procedures, the existence of the statutory procedures speak for themselves. The legislative process used to terminate these specific employees clearly did not meet the constitutionally guaranteed due process requirements.

"Furthermore, even if the Court could find that this legislative process might have satisfied the procedural due process requirements, the Plaintiffs' uncontroverted affidavit of David Darling indicates the KWO employees did not have a full and fair opportunity to be heard and to voice their misgivings regarding SB 501.

"Accordingly, the Court finds SB 501 denied Plaintiffs' statutory and constitutional procedural due process rights.

"As for Defendants' suggestion that Plaintiffs should seek their remedy at the

ballot box and not in the Courts, this Court would remind Defendants that the legislature's actions, whether or not supported by individual voters, are still subject to the state and federal constitutions and no individual will be denied access to the court solely because he or she has suffered a constitutional deprivation at the hands of the legislature."

The district court's reference to the David Darling affidavit needs some explanation. It is stated therein that plaintiffs were discouraged from discussing with the legislators their views in opposition to the bill. Defendant Harkins is said, in essence, to have reminded them that he held the keys to any rehiring and to have inferred that any expression of opposition to the bill would be remembered.

In holding that Senate Bill No. 501 violated plaintiffs' substantive due process rights, the district court reasoned:

"5. 'Due process is not merely a procedural safeguard; it reaches those situations where the deprivation of life, liberty, or property is accomplished by legislation which, by operating in the future, can, given even the fairest procedure in application to individuals, destroy the enjoyment of all three. Substantive due process may be roughly defined as the constitutional guaranty that no person shall be deprived of his life, liberty, or property for arbitrary reasons, such a deprivation being constitutionally supportable only if the conduct from which the deprivation came is proscribed by reasonable legislation (that is legislation the enactment of which is within the scope of legislative authority) reasonably applied (that is, for a purpose consonant with the purpose of the legislation itself).' 16A Am. Jur. 2d Sec. 816, Constitutional Law, p. 978-979 (1979).

"Essentially, substantive due process is protection from arbitrary action and the standard to be applied is one of reasonableness. *Pittsburgh Press Co. v. Pittsburgh Com. on Human Relations*, 413 U.S. 376, 37 L. Ed. 2d 669, 93 S. Ct. 2553, *reh. den.* 414 U.S. 881, 38 L. Ed. 2d 128, 94 S. Ct. 30 (1973).

"In *Beller v. Middendorf*, 632 F. 2d 788 (9th Circuit, 1980), the court noted that a substantive due process inquiry involves a case-by-case balancing of the nature of the individual interest infringed, the importance of the government interest furthered, the degree of infringement and the sensitivity of the government entity responsible for the action to more carefully tailored alternative means of achieving its goal. See *Zablocki v. Redhail*, 434 U.S. 374, 54 L. Ed. 2d 618, 98 S. Ct. 673 (1978); *Moore v. City of E. Cleveland*, 431 U.S. 494, 52 L. Ed. 2d 531, 97 S. Ct. 1932 (1977).

"In the case before the Court, Defendant Harkins and the legislature used SB 501 to infringe upon recognized property interest in continued employment absent termination for a merit-related cause. The degree of infringement was total, as the Plaintiffs were terminated without regard to merit. The state's interest, at the KWO under Defendant Harkins, evidently (Defendants chose not to brief this issue) was in the need for flexibility and reorganization within the KWO. There were alternatives available, to the legislature and to the director of the agency, Harkins, to effectuate the reorganization and to achieve flexibility within the agency without statutorily terminating these employees.

"As stated above, substantive due process is designed to protect individuals from arbitrary actions. In consideration of the record, and in balancing the interests involved, the Court finds that SB 501's provision requiring Plaintiffs' termination was a violation of Plaintiffs' substantive due process rights."

We agree with the district court's analysis and conclusion. We hold that the district court did not err in holding Senate Bill No. 501 (K.S.A. 74-2614a and 1984 amendments to K.S.A. 1983 Supp. 74-2614) to be unconstitutional as violative of plaintiffs' procedural and substantive due process rights.

The district court further held Senate Bill No. 501 unconstitutional on equal protection grounds. By virtue of our holding on the due process issue, it is unnecessary to consider defendants' claims of error relative to the district court's determination on this alternate ground.

We turn now to the issue raised in the cross-appeal. The final two paragraphs of the district court's memorandum decision state:

"Accordingly, the Court orders the reinstatement of Plaintiffs and awards back pay and benefits to Plaintiffs. The Civil Service Board shall have authority to determine such amounts if counsel cannot agree to stipulate to the amounts due.

"Court costs are assessed to Defendants, however pursuant to the discretionary language contained in 42 U.S.C. Sec. 1988 the Court denies attorney's fees to the Plaintiffs. The foregoing Memorandum Decision and Order shall serve as the Order of the Court, no further Journal Entry being required."

Plaintiffs contend that this denial of attorney fees constituted an abuse of discretion as they were the prevailing parties in a 42 U.S.C. § 1983 (1982) action and, accordingly, should be awarded attorney fees.

An interesting question arises as to whether the relief granted by the district court was in a § 1983 action. Nowhere in the district court's 21-page opinion is there any reference to § 1983. The only reference to 42 U.S.C. § 1988 (1982) is in the previously quoted paragraph. The district court had two consolidated cases before it. The first (84-CV-876) was an appeal from an adverse decision of the Civil Service Board. Through the Civil Service Board, plaintiffs were seeking all the relief they ultimately received from the district court—reinstatement from wrongful terminations and back pay. Certainly § 1983 was not involved therein. The second action (84-CV-1212) was a multifaceted petition requesting the court to grant the requested relief of

reinstatement and back pay on alternate theories of: (1) a declaratory judgment that Senate Bill No. 501 was unconstitutional; (2) a § 1983 action premised on violation of due process; (3) impairment of contract; (4) mandamus; and (5) injunction.

In its preliminary description of the matter before it, the district court's opinion states:

"Plaintiffs appealed their dismissals to the Civil Service Board. The Board ruled that it lacked jurisdiction to hear Plaintiffs' appeals as they were no longer considered classified employees and because the Board had no authority to determine the constitutionality of the legislation which had ordered their termination. The Board's decisions were appealed to this Court in Case No. 84-CV-876. Subsequently, the Plaintiffs filed a direct action against the KWO and Joseph Harkins, as Director of the KWO, alleging that K.S.A. 74-2614 and K.S.A. 74-2614a (also referred to as Senate Bill 501) are unconstitutional."

The district court held Senate Bill No. 501 to be unconstitutional based upon violations of procedural and substantive due process and equal protection. No order in mandamus or for injunctive relief was entered. Viewed in its entirety, the district court's decision appears to have been essentially a declaratory judgment holding Senate Bill No. 501 unconstitutional.

Another factor should also be considered. 42 U.S.C. § 1983 provides:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia."

We have held that, in certain circumstances, a state agency should be considered a "person" under § 1983 in state court. In *Gumbhir v. Kansas State Board of Pharmacy*, 231 Kan. 507, 513, 646 P.2d 1078 (1982), *cert. denied* 459 U.S. 1103 (1983), we discussed whether a state agency should be considered a "person" in a § 1983 action and concluded:

"We think the sounder view in a case such as this, where prospective injunctive relief is sought, is that a state agency should be considered a 'person' under the statute."

In *Beck v. Kansas Adult Authority*, 241 Kan. 13, 21, 735 P.2d 222 (1987), we said:

"We have never held that state agencies were persons under 42 U.S.C. § 1983 for the purpose of suits seeking damages thereunder. . . . We have carefully considered the issue, and hold that, while the State of Kansas is a person for the purposes of Section 1983 actions wherein injunctive relief is sought, the State has not waived its sovereign immunity from suits seeking damages under that section."

State agencies, therefore, are considered "persons" under § 1983 where injunctive relief is involved. In the case before us, no injunctive relief was obtained.

The action herein was essentially between an employer and its employees over allegedly wrongful terminations of employment. The key element in obtaining the relief requested (reinstatement and back pay) was a judicial declaration that Senate Bill No. 501 was unconstitutional. The requested relief of reinstatement and back pay logically flowed from this determination as plaintiffs' terminations were thus rendered improper. Plaintiffs requested additional relief under § 1983 for damages to reputation and for emotional distress which was not granted.

Under the totality of the circumstances herein, we find no error or abuse of discretion in the district court's denial of attorney fees.

The judgment is affirmed.