IN THE SUPREME COURT OF THE STATE  OF KANSAS

No. 124,415

MARK A. BRUCE,
*Plaintiff,*

v.

LAURA KELLY, in Her Official Capacity as
Governor of the State of Kansas,
WILL LAWRENCE, in His Individual Capacity as
Chief of Staff to Governor Laura Kelly, and
HERMAN T. JONES, in His Official and Individual Capacities as
Superintendent of the Kansas Highway Patrol,
*Defendants.*

SYLLABUS BY THE COURT

1.

Questions certified to the Kansas Supreme Court under K.S.A. 60-3201 must be questions of law of this state. In answering certified questions, this court will not decide questions of law outside the scope of the certified question, nor will this court decide any question of fact.

2.

The Kansas Civil Service Act, K.S.A. 75-2925 et seq., divides state civil service employees into two groups:  those in the unclassified service and those in the classified service. The unclassified service includes those positions specifically designated as in the unclassified service. The classified service includes those positions in state service not included in the unclassified service. Thus, positions in the state service are presumptively within the classified service unless otherwise specified.

3.

Through its many procedural and substantive protections, the Kansas Civil Service Act, K.S.A. 75-2925 et seq., grants permanent classified employees the right of continued employment absent any valid cause for termination, and that right is a property right that may not be impaired without due process of law. In contrast, unclassified employees are at-will employees and thus have no property interest in continued employment.

4.

K.S.A.74-2113's plain language defines the rank of major in the Kansas Highway Patrol as within the classified service.

5.

If Kansas Highway Patrol members attain permanent status in the classified service before being appointed superintendent or assistant superintendent within the unclassified service, then K.S.A. 74-2113 requires that they be "returned" to their former classified rank with permanent status after their term in the unclassified service ends.

6.

K.A.R. 1-7-4 (2021 Supp.) does not require Kansas Highway Patrol superintendents or assistant superintendents to serve another six-month probationary period upon returning to their former rank in the classified service, as contemplated in K.S.A. 74-2113(a).

On certification of two questions of law from the United States District Court for the District of Kansas, DANIEL D. CRABTREE, judge. Opinion filed August 5, 2022. The answers to the certified questions are determined.

*Alan V. Johnson*, of Sloan, Eisenbarth, Glassman, McEntire & Jarboe, L.L.C., of Topeka, argued the cause and was on the briefs for plaintiff.

*David R. Cooper*, of Fisher, Patterson, Sayler & Smith, LLP, of Topeka, argued the cause and was on the brief for defendants.

The opinion of the court was delivered by

WALL, J.: This opinion addresses two questions of law certified to our court by the United States District Court for the District of Kansas. Certified question proceedings are unique because the lawsuit is not pending before any Kansas state court. Even so, the Legislature has granted the Kansas Supreme Court jurisdiction to answer questions of state law raised by a federal court (or other foreign jurisdiction) when our responses may control the outcome of the matter pending before the certifying court and no Kansas precedent addresses the questions certified.

Here, the certified questions arise from a federal civil lawsuit Mark A. Bruce filed against Governor Laura Kelly, Chief of Staff to the Governor, Will Lawrence, and Kansas Highway Patrol Superintendent Herman T. Jones (Defendants). Bruce worked for the Kansas Highway Patrol (KHP) for 30 years. He was promoted to the rank of major in March 2008 and successfully completed a six-month probationary period in that role. In April 2015, Governor Sam Brownback appointed Bruce to serve as superintendent of the KHP. He continued in this role until March 2019, when Bruce alleges Defendants forced him to resign his employment.

Bruce argues K.S.A. 74-2113 required Defendants to return him to the rank he held before his appointment to Superintendent—a return to the rank of major with permanent status in the classified service—rather than terminate his employment with the KHP. Bruce claims Defendants' refusal to continue his employment, as required by statute, gives rise to constitutional due process claims under 42 U.S.C. § 1983 (2018) and a state law claim for tortious interference with a business relationship. Defendants,

3

however, contend Bruce had no right to continued employment. First, Defendants argue K.S.A. 74-2113 places the rank of major within the unclassified service. And employees in the unclassified service have no right to continued employment. Second, even if K.S.A. 74-2113 defines the rank of major within the classified service, Defendants argue K.A.R. 1-7-4 (2021 Supp.) would have required Bruce to serve another probationary period upon his return to the rank of major, during which his employment could be terminated at will. This means Defendants could end the employment relationship for any or no reason.

Given the parties' conflicting interpretations of the statutes and administrative regulations, coupled with the lack of controlling Kansas precedent interpreting these provisions, the United States District Court certified two questions:

> "1. Does Kan. Stat. Ann. § 74-2113 define the rank of Major in the KHP as a member of the unclassified or classified service of the Kansas civil service?

> "2. If Kan. Stat. Ann. § 74-2113 defines the rank of Major in the KHP as a member of the classified service, does Kan. Admin. Regs. § 1-7-4 require a former member of the classified service—who already has completed a required probationary period for the classified service—to serve another six month probationary period in the classified service after serving as a member of the unclassified service?" *Bruce v. Kelly*, No. 20-4077-DDC-GEB, 2021 WL 4284534, at *32 (D. Kan. 2021) (unpublished opinion).

As to the first question, we hold that K.S.A. 74-2113 defines the rank of major within the classified service under the Kansas Civil Service Act (KCSA), K.S.A. 75-2925 et seq. As to the second question, we hold that K.A.R. 1-7-4 (2021 Supp.) does not require a former KHP superintendent or assistant superintendent to serve another probationary period when returning to their former rank as contemplated in K.S.A. 74-2113(a).

FACTS AND PROCEDURAL BACKGROUND

In its certification order, the United States District Court set forth these facts pertinent to the certified questions:

"The KHP is an agency of the State of Kansas that enforces traffic, criminal, and other laws of Kansas throughout the state. In June 1989, the KHP hired plaintiff as a trooper. On March 14, 2008, the KHP promoted plaintiff to the position of Major. After his promotion, plaintiff served a probationary period of six months, as Kan. Stat. Ann. § 75-2946 requires. After this probationary period, plaintiff attained permanent status as a Major in the classified service.

"On April 2, 2015, then-Governor of Kansas, Sam Brownback, appointed plaintiff to serve as the Superintendent of the KHP, at the pleasure of the Governor. In November 2018, Laura Kelly was elected as the Governor of Kansas. As Governor-elect, Ms. Kelly announced that plaintiff would remain as KHP Superintendent.

"On March 28, 2019, Governor Kelly's Chief of Staff, Will Lawrence, summoned plaintiff to Mr. Lawrence's office for a meeting. In the meeting, Mr. Lawrence told plaintiff that Governor Kelly was not going to retain him as KHP Superintendent. And[] Mr. Lawrence told plaintiff 'that "we need you to resign."' After further discussion, plaintiff told Mr. Lawrence that he would resign. Mr. Lawrence then handed plaintiff a pre-prepared resignation letter. . . . Plaintiff signed the resignation letter, and he handed it back to Mr. Lawrence.

"Mr. Lawrence then handed plaintiff a pre-prepared letter dated March 18, 2019[,] and signed by Mr. Lawrence. The letter stated in relevant part:

'This letter is to confirm receipt and acceptance of your resignation from your position as the Superintendent of the Kansas Highway Patrol (KHP), effective April 6, 2019. Effective immediately, you are relieved

5

of all duties and authority and are being placed on administrative leave until the effective date of your resignation.

. . . .

'Thank you for your service to the State of Kansas. I wish you success in your future endeavors.'

"During the March 28, 2019 meeting, Mr. Lawrence never discussed with plaintiff the option of returning to plaintiff's former rank of Major. Based on plaintiff's March 28 conversation with Mr. Lawrence and the language of Mr. Lawrence's letter, plaintiff understood and believed that Governor Kelly was dismissing him from all employment with the KHP. As a consequence, on March 29, 2019, plaintiff initiated email communications with Mr. Lawrence about retiring from the KHP. Plaintiff initiated these communications because 'he understood and believed that he had no other choice but to retire from the KHP.'

"On April 2, 2019, plaintiff sent a letter to Governor Kelly, with a copy to Mr. Lawrence. The letter provided, in relevant part:

'This letter serves as notice that I will retire from the Kansas Highway Patrol effective May 1, 2019. My last day on the payroll will be April 8, 2019.

. . . .

'I am proud to have had the honor to serve and lead the Kansas Highway [Patrol] for the past 30 years. I wish the Agency and its employees nothing but the best in the future.'" 2021 WL 4284534, at *3-4.

Bruce later sued Defendants in the United States District Court for the District of Kansas. He alleged Defendants constructively discharged him from the KHP despite the requirement in K.S.A. 74-2113 to return him to the rank of major after his term as

6

superintendent ended. He asserted claims under 42 U.S.C. § 1983 against Governor Kelly, in her official capacity, and Lawrence, in his personal capacity, alleging they deprived him of his property interest in continued employment with the KHP without due process of law. He also brought a claim under the Kansas Tort Claims Act against Lawrence, alleging Lawrence tortiously interfered with Bruce's prospective business relations with the KHP. Bruce brought a fourth claim against his successor as KHP superintendent, Herman T. Jones, but that claim is not relevant to this opinion.

Defendants moved to dismiss Bruce's complaint. They argued, in part, that Bruce had failed to state a § 1983 claim for due process violations or a state law tortious interference claim because Bruce had neither a protected property interest nor a prospective business advantage in continued employment with the KHP. Defendants maintained that the KHP had declassified the rank of major in 2016, and the Legislature amended K.S.A. 74-2113 in 2018 to reflect this change. According to Defendants, the rank of major was no longer within the classified service, so Bruce did not have a property interest in being returned to the rank of major with permanent status in the classified service. In the alternative, if majors were still within the classified service, Defendants argued that K.A.R. 1-7-4 (2021 Supp.) would have required Bruce to serve a six-month probationary period upon returning to the classified service, and during this period, Defendants could terminate his employment at will.

In response, Bruce argued that K.S.A. 74-2113 continues to define majors as within the classified service. Bruce also claimed that K.A.R. 1-7-4 (2021 Supp.) would not require him to serve a probationary period upon his return to the rank of major because he completed his mandatory probationary period after KHP appointed him to this rank in 2008. Finally, Bruce noted that K.S.A. 74-2113 required that he be "returned" to the rank he held when appointed as superintendent. He construed this provision to require

7

KHP to place him in the same rank, classification, and status he had attained before his appointment to superintendent in 2015—the rank of major with permanent status in the classified service.

In its order, the United States District Court observed that K.S.A. 74-2113 "wasn't drafted in a clear and consistent fashion[, and e]ach side of the caption presents a compelling argument why the plain language of the statute favors the competing constructions that each side proposes." 2021 WL 4284534, at *19. The court was also unsure whether K.A.R. 1-7-4 (2021 Supp.), when applied to the facts, would require Bruce to serve another probationary period if he were returned to the rank of major within the classified service. 2021 WL 4284534, at *24. Thus, the court certified the two questions of state law now before us. 2021 WL 4284534, at *23-24, 32.

ANALYSIS

I.  *Standard of Review and Relevant Legal Framework*

We have jurisdiction to answer questions of state law certified to us by a United States District Court under K.S.A. 60-3201. *Burnett v. Southwestern Bell Telephone*, 283 Kan. 134, 136, 151 P.3d 837 (2007). The statute permits the Kansas Supreme Court to answer certified "questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the supreme court and the court of appeals of this state." K.S.A. 60-3201.

"By statutory definition, certified questions present questions of law, and we exercise unlimited review over such questions." *Craig v. FedEx Ground Package System, Inc.*, 300 Kan. 788, 792, 335 P.3d 66 (2014). But the scope of our review is limited by the

8

certification order issued by the United States District Court. Thus, any questions of law that are not within the scope of the certification order and all questions of fact fall outside the jurisdictional reach of K.S.A. 60-3201. See *Hays v. Ruther*, 298 Kan. 402, 404, 313 P.3d 782 (2013) (court will not decide questions of fact when answering certified question and parties' request for factual findings not properly before the court); *Winnebago Tribe of Nebraska v. Kline*, 283 Kan. 64, 72, 150 P.3d 892 (2007) (declining to consider legal argument based on federal law because "it is neither included in the certified question nor could it properly have been included in the certified question").

The two certified questions also require us to interpret Kansas statutes and administrative regulations, which again present questions of law subject to unlimited review. *Woessner v. Labor Max Staffing*, 312 Kan. 36, 45, 471 P.3d 1 (2020). The rules governing such an interpretation are well-established:

> "The most fundamental rule of statutory construction is that the intent of the Legislature governs if that intent can be ascertained. In ascertaining this intent, we begin with the plain language of the statute, giving common words their ordinary meaning. When a statute is plain and unambiguous, an appellate court should not speculate about the legislative intent behind that clear language, and it should refrain from reading something into the statute that is not readily found in its words. But if a statute's language is ambiguous, we will consult our canons of construction to resolve the ambiguity. [Citations omitted.]" *Johnson v. U.S. Food Service*, 312 Kan. 597, 600-01, 478 P.3d 776 (2021).

But even when the language of the statute is clear, we must still consider various provisions of an act *in pari materia* to reconcile and bring those provisions into workable harmony, if possible. *Neighbor v. Westar Energy, Inc.*, 301 Kan. 916, 919, 349 P.3d 469 (2015); *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 918, 296 P.3d 1106 (2013). Thus, the doctrine of *in pari materia* has utility beyond those instances where statutory ambiguity exists. It can be used as a tool to assess whether the statutory

9

language is plain and unambiguous in the first instance, and it can provide substance and meaning to a court's plain language interpretation of a statute. See *Othi v. Holder*, 734 F.3d 259, 265 (4th Cir. 2013) ("'To determine a statute's plain meaning, we not only look to the language itself, but also the specific context in which that language is used, and the broader context of the statute as a whole.'"); see also Cross, Statutory Interpretation 128 (1976) ("[I]t seems that the present position is that, when an earlier statute is *in pari materia* with a later one, it is simply part of its context to be considered by the judge in deciding whether the meaning of a provision in the later statute is plain."); Dickerson, The Interpretation and Application of Statutes 233 (1975) (noting doctrine of *in pari materia* used to "reflect or buttress a sincere attempt by the courts to ascertain the [plain] meaning of the statute as read in its proper context").

We employ the doctrine of *in pari materia* here to lend support to our plain language interpretation of the statutory and regulatory provisions relevant to the certified questions. See *State v. Batson*, 99 Haw. 118, 122, 53 P.3d 257 (2002) (employing *in pari materia* analysis to support validity of plain meaning interpretation of statute); *Hornbeck Offshore Transp., LLC v. U.S. Coast Guard*, 424 F. Supp. 2d 37, 52 (D.D.C. 2006) (same).

II.  *Certified Question 1:  Does K.S.A. 74-2113 Define the Rank of Major in the KHP as Within the Unclassified or Classified Service?*

To answer the first certified question, we begin by discussing the nature and character of classified and unclassified service under the KCSA. Then, we interpret the relevant statutory provision, K.S.A. 74-2113, to determine whether KHP majors are placed within the classified or unclassified service. Ultimately, we hold that the plain language of the statute places KHP majors in the classified service, and this plain-language interpretation is bolstered by traditional rules of statutory interpretation.

## A. Classified and Unclassified Service Under the KCSA

The KCSA divides state civil service employees into two groups: those in the unclassified service and those in the classified service. K.S.A. 75-2935. The unclassified service includes those positions specifically designated by law as being in the unclassified service, or those positions designated as or converted to the unclassified service by an appointing authority under limited circumstances. See K.S.A. 75-2935(1); K.A.R. 1-2-97 (defining unclassified service as "those positions specifically designated by law as unclassified"). The classified service includes those positions in state service not included in the unclassified service. See K.S.A. 75-2935(2); K.A.R. 1-2-19 (defining classified service as "all positions in the state service, except those which are specifically placed in the unclassified service by K.S.A. 75-2935, as amended, or other sections of the statutes"). Thus, positions in the state service are presumptively within the classified service unless otherwise specified.

An extensive network of statutes and administrative regulations governs employment in the classified service. See K.S.A. 75-2935(2) ("No person shall be appointed, promoted, reduced or discharged as an officer, clerk, employee or laborer in the classified service in any manner or by any means other than those prescribed in the Kansas civil service act and the rules adopted in accordance therewith."). Appointments in the classified service are made "according to merit and fitness from eligible pools which so far as practicable shall be competitive." K.S.A. 75-2935(2); see also K.S.A. 75-2939 through K.S.A. 75-2945 (setting forth rules on the selection and appointment of employees in classified service). Those persons appointed to the classified service must first serve a probationary period, during which their employment may be terminated at will. K.S.A. 75-2946; K.A.R. 1-7-3 (2021 Supp.); see also K.A.R. 1-7-4 (2021 Supp.) (providing for probationary period in some cases other than for new hires). Once an employee successfully completes the probationary period, that employee earns permanent

11

status in the classified service. K.S.A. 75-2946; see also K.A.R. 1-2-57 (defining "permanent status" as "the status of an employee who has successfully completed a probationary period, in accordance with K.A.R. 1-7-3, 1-7-4, and 1-7-6").

A hallmark of the classified service is the employment protections afforded to those who have achieved permanent status. Indeed, "[o]ne of the purposes of civil service laws is to take from the appointing officer the right of arbitrary removal of an employee." *Goertzen v. State Department of Social & Rehabilitation Services*, 218 Kan. 313, 320, 543 P.2d 996 (1975). An appointing authority may dismiss, demote, or suspend a permanent classified employee only for valid cause as specified in the KCSA. See K.S.A. 75-2949; *Wright v. Kansas Water Office*, 255 Kan. 990, 996-97, 881 P.2d 567 (1994). And permanent classified employees are entitled to many other procedural and substantive protections when an appointing authority takes adverse employment action against them:

> "Under the Kansas Civil Service Act, a permanent classified civil service employee is entitled to various procedural and substantive safeguards in the event of a dismissal, demotion, or suspension, including: (1) prior notice; (2) a written statement setting forth the reasons for the intended action; (3) an opportunity to respond in writing, in person, or both, to a representative of the appointing authority; (4) a responsive written decision by the appointing authority; and (5) the right to appeal from any adverse decision to the Civil Service Board for a full evidentiary hearing; and, thereafter, the right to an administrative appeal from any adverse decision to a state district court." *Darling v. Kansas Water Office*, 245 Kan. 45, 48, 774 P.2d 941 (1989).

See also K.S.A. 75-2949 (describing procedure pertaining to dismissal, demotion, or suspension of employees in classified service).

Through these provisions, the KCSA grants classified employees "the right of continued employment in the absence of a valid cause for termination." *Wright*, 255 Kan. 990, Syl. ¶ 1. And that right is a property interest that may not be impaired without due process of law. *McMillen v. U.S.D. No. 380*, 253 Kan. 259, Syl. ¶ 4, 855 P.2d 896 (1993).

In contrast, employees in the unclassified service serve at the pleasure of their appointing authority and may be terminated at will. See *Stoldt v. City of Toronto*, 234 Kan. 957, 964, 678 P.2d 153 (1984) ("[T]he tenure of any office not provided for in the constitution may be declared by statute, and when not so declared such office shall be held at the pleasure of the appointing authority."); see also Kan. Const. art. 15, § 2 ("The tenure of any office not herein provided for may be declared by law; when not so declared, such office shall be held during the pleasure of the authority making appointment."). Because unclassified employees may be terminated at will, they have no property interest in continued employment. See *Moorhouse v. City of Wichita*, 259 Kan. 570, 580, 913 P.2d 172 (1996) ("An employee-at-will has no property interest in continued employment.").

B. *The Plain Language of K.S.A. 74-2113 Places the Rank of Major Within the Classified Service*

Having identified the legally significant distinction between classified and unclassified service, we now turn to the substance of the first certified question, which asks whether K.S.A. 74-2113 defines the rank of major within the classified or unclassified service. To answer that question, we begin with the language of K.S.A. 74-2113(a), which identifies three distinct personnel categories within the agency and the classification of each category under the KCSA:

13

"There is hereby created a Kansas highway patrol. The patrol shall consist of: (1) A superintendent, who shall have the rank of colonel and who shall have special training and qualifications for the position; (2) an assistant superintendent, who shall have the rank of lieutenant colonel; and (3) officers and troopers who are appointed in accordance with appropriation acts and as provided in this section. The superintendent and assistant superintendent shall be within the unclassified service under the Kansas civil service act. The assistant superintendent shall be appointed by the superintendent from among the members of the patrol, and shall serve at the pleasure of the superintendent. If a person appointed as superintendent, assistant superintendent or major is a member of the patrol when appointed, the person in each case, upon termination of the term as superintendent, assistant superintendent or major, respectively, shall be returned to a rank not lower than the rank the person held when appointed as superintendent, assistant superintendent or major. If the rank is filled at that time, a temporary additional position shall be created in the rank until a vacancy occurs in such rank. All other officers, troopers and employees shall be within the classified service under the Kansas civil service act."

The parties posit two contrasting interpretations of this statute. Bruce focuses on the statute's declaration that "[t]he superintendent and assistant superintendent shall be within the unclassified service . . . All other officers, troopers and employees shall be within the classified service under the Kansas civil service act." K.S.A. 74-2113(a). Because the statutory language expressly identifies only the superintendent and assistant superintendent as unclassified positions, Bruce concludes majors are among the "other officers, troopers and employees" in the classified service.

Defendants draw the opposite conclusion from the statutory language. Their interpretation relies on the intermediary sentences Bruce overlooks. Those sentences provide that if a person appointed to the position of superintendent, assistant superintendent, or major was a member of the KHP when appointed, then upon termination that person "shall be returned to a rank not lower than the rank the person held when appointed." K.S.A. 74-2113(a). Defendants argue these intermediary sentences acknowledge that majors, along with the superintendent and assistant superintendent, are

14

within the unclassified service. Thus, Defendants claim the last sentence of subsection (a) means all officers, troopers, and employees other than the superintendent, assistant superintendent, and majors are within the classified service.

Following the proper course for statutory interpretation, we hold the plain language of K.S.A. 74-2113 places the rank of major within the classified service. This conclusion is evident when analyzing the plain language of the provisions within subsection (a) and considering how they operate together in harmony with other provisions within the statute.

The first two sentences of K.S.A. 74-2113(a) create the KHP and define the three categories of personnel comprising the agency:

> "There is hereby created a Kansas highway patrol. *The patrol shall consist of: (1) A superintendent*, who shall have the rank of colonel and who shall have special training and qualifications for the position; *(2) an assistant superintendent*, who shall have the rank of lieutenant colonel; *and (3) officers and troopers* who are appointed in accordance with appropriation acts and as provided in this section." (Emphases added.)

The third sentence of subsection (a) expressly places the first two personnel categories within the unclassified service: "The superintendent and assistant superintendent shall be within the unclassified service under the Kansas civil service act." K.S.A. 74-2113(a). And the seventh sentence of subsection (a) places the remaining personnel category within the classified service: "All other officers, troopers and employees shall be within the classified service under the Kansas civil service act." K.S.A. 74-2113(a).

Interpreting K.S.A. 74-2113(a) to place KHP majors within the classified service adheres to the plain language throughout this subsection. See *United States v. Brown*, 974 F.3d 1137, 1143 (10th Cir. 2020) (courts obligated to interpret statutes as symmetrical

15

and coherent regulatory schemes and fit all parts into a harmonious whole, if possible).

Under this interpretation, the first two sentences in subsection (a) establish the KHP and identify the three groups of personnel within the agency: (1) superintendent; (2) assistant superintendent; and (3) all other officers and troopers. The statute then provides the classifications for these same three personnel groups—superintendent and assistant superintendent are expressly placed in the unclassified service (in the third sentence) while all other officers and troopers are expressly placed in the classified service (in the seventh sentence). Majors are not included among the personnel groups expressly designated within the unclassified service (in the third sentence). Thus, majors fall within the category of "all other officers [and] troopers" who are placed in the classified service (in the seventh sentence). This interpretation aligns with the three-part division of KHP personnel (in the second sentence), providing a coherent and harmonious reading of the plain language of subsection (a). See *Northern Natural Gas Co.,* 296 Kan. at 918 (courts must consider provisions *in pari materia* and bring them into workable harmony, if possible).

Interpreting K.S.A. 74-2113 to define majors within the classified service is not only consistent with the plain language throughout subsection (a) but also with the plain language of other subsections of the statute. Much like subsection (a), the Legislature continued to distinguish the superintendent and assistant superintendent from "[a]ll other members of the patrol" in subsections (b) and (c):

> "(b) *The superintendent* of the patrol shall be appointed by the governor, subject to confirmation by the senate as provided in K.S.A. 75-4315b, and amendments thereto, and shall receive an annual salary fixed by the governor. Except as provided by K.S.A. 46-2601, and amendments thereto, no person appointed as superintendent shall exercise any power, duty or function as superintendent until confirmed by the senate. *The assistant superintendent* shall receive an annual salary fixed by the superintendent and approved by the governor.

16

"(c) *All other members of the patrol* shall be appointed by the superintendent in accordance with appropriation acts and with the Kansas civil service act. " (Emphases added.) K.S.A. 74-2113(b), (c).

Thus, interpreting K.S.A. 74-2113(a) to define the rank of major within the classified service aligns with the Legislature's division of the KHP into three distinct personnel groups and its pattern throughout the statute of distinguishing the superintendent and assistant superintendent from all other KHP members.

Of course, the third and seventh sentences are not the only provisions within subsection (a). And when interpreting a statute, we do not consider isolated parts alone, but all relevant parts together. *Northern Natural Gas Co.*, 296 Kan. at 918. The fifth and sixth sentences of subsection (a) state:

"If a person appointed as superintendent, assistant superintendent or major is a member of the patrol when appointed, the person in each case, upon termination of the term as superintendent, assistant superintendent or major, respectively, shall be returned to a rank not lower than the rank the person held when appointed as superintendent, assistant superintendent or major. If the rank is filled at that time, a temporary additional position shall be created in the rank until a vacancy occurs in such rank." K.S.A. 74-2113.

Defendants rely on these two sentences to argue K.S.A. 74-2113 places majors within the unclassified service. They point out the fifth and sixth sentences immediately precede the seventh sentence of subsection (a), which states "[*a*]*ll other* officers, troopers and employees shall be within the classified service." (Emphasis added.) K.S.A. 74-2113(a). Based on this sequencing, Defendants assert the fifth and sixth sentences modify, or must be read along with, the seventh sentence. When doing so, Defendants argue the phrase "all other" (in the seventh sentence) means "all KHP personnel other than the superintendent, assistant superintendent, and majors." Thus, while K.S.A. 74-2113(a) fails to expressly include majors within the unclassified service, Defendants

17

contend the statute does so implicitly through its grammatical structure. See *Barten v. Turkey Creek Watershed Joint District No. 32*, 200 Kan. 489, 504, 438 P.2d 732 (1968) (Under the last antecedent rule, qualifying words are "ordinarily confined to the last antecedent, or to the words and phrases immediately preceding.").

But Defendants' construction disregards the subject matter addressed in the plain language of these provisions. While the fifth sentence of subsection (a) does explicitly mention majors, that sentence, along with the sixth sentence, addresses specific employment protections the Legislature created for KHP superintendents, assistant superintendents, and majors—the right to return to their former positions. But neither the fifth nor sixth sentence addresses the classification of their positions under the KCSA. In fact, only two sentences within subsection (a) specifically address the classification of KHP personnel groups: (1) the third sentence, placing the superintendent and assistant superintendent within the unclassified service; and (2) the seventh sentence, placing all other officers, troopers, and employees within the classified service.

By focusing on the subject matter addressed in the plain language of subsection (a), it is apparent the phrase "all other" in the seventh sentence must be read along with the third sentence because both provisions address the same subject matter—the proper classification of KHP personnel under the KCSA. Defendants would have us construe the phrase "all other" to modify the fifth and sixth sentences even though they do not address the same subject matter. Such a construction is not supported by a harmonious, plain language reading of subsection (a). See *McMillen,* 253 Kan. at 268-69 (when statutory provisions affect the same issue and subject matter, such provisions should be read together to make them consistent, harmonious, and sensible). And this plain language disposes of Defendants' construction and their reliance on the last antecedent rule. See *State v. Kleypas*, 272 Kan. 894, 950, 40 P.3d 139, 194 (2001) (Last antecedent rule "may not be employed to reach a certain result where the language of the statute is plain and

18

unambiguous."); *Link, Inc. v. City of Hays*, 266 Kan. 648, 654, 972 P.2d 753 (1999) (noting that the last antecedent rule is "flexible" and should not be applied in a formulaic manner where the subject matter, sense, or meaning require a different construction).

We conclude that K.S.A. 74-2113(a) places the rank of major within the classified service. This interpretation adheres to the plain language and brings the subsections of the statute into harmony.

### C. The Plain Language Interpretation Is Corroborated by Traditional Methods of Statutory Construction

Because we can answer the first certified question based on the statute's plain language, our statutory interpretation analysis could end here. That said, even if we were to conclude that K.S.A. 74-2113's plain language was ambiguous, traditional canons of statutory construction and the legislative history favor the same interpretation. See *Jarvis v. Kansas Dept. of Revenue*, 312 Kan. 156, 159, 473 P.3d 869 (2020) (if Legislature's intent unclear from statutory language, court may look to legislative history, background considerations, and canons of construction to determine legislative intent).

#### 1. Interpreting K.S.A. 74-2113 to Place Majors Within the Classified Service Is Consistent with Traditional Canons of Statutory Construction

Construing K.S.A. 74-2113 to place majors within the classified service finds support in the canon of *expressio unius est exclusio alterius*. Under this canon, courts may presume the Legislature intended to exclude an item from a specific statutory list if the Legislature did not include that item in the list. *Cole v. Mayans*, 276 Kan. 866, 878, 80 P.3d 384 (2003). K.S.A. 74-2113(a) expressly includes the superintendent and assistant superintendent in the list of KHP personnel within the unclassified service. But the Legislature did not include majors in this list of unclassified personnel. Under the

19

canon of *expressio unius est exclusio alterius*, we may presume the omission is purposeful, and the Legislature intended to exclude majors from the unclassified service. See *Patterson v. Cowley County, Kansas*, 307 Kan. 616, 626, 413 P.3d 432 (2018) (court can presume the Legislature intended to exclude items not expressly identified among the list of items specified by statute).

Our reliance on this canon of statutory construction is particularly befitting here when reading K.S.A. 74-2113 together with the KCSA. We must read these statutory provisions in harmony because K.S.A. 74-2113(c) provides that all members of the KHP, other than the superintendent and assistant superintendent, are to be appointed in accordance with the KCSA. As discussed above, the KCSA effectively presumes state civil service positions are within the classified service unless otherwise specified. See K.S.A. 75-2935(1) (identifying specific positions within unclassified service); K.S.A. 75-2935(2) (classified service includes all positions not designated unclassified); K.A.R. 1-2-19 (defining "classified service" as all positions in state service except positions specifically placed in unclassified service). In this regard, the KCSA's approach to determining the classification of state personnel aligns with the canon of *expressio unius est exclusio alterius*—all unclassified positions must be expressly identified, and if not, the position is presumptively classified. Thus, KHP majors are within the classified service because they must be appointed in accordance with the KCSA and no statute expressly places them in the unclassified service.

> 2. *Construing K.S.A. 74-2113 to Place Majors Within the Classified Service Is Supported by the Legislative History*

Construing K.S.A. 74-2113(a) to define the rank of major within the classified service is also the most logical statutory interpretation given the legislative amendments and related history supporting those amendments over time.

20

K.S.A. 74-2113 (previously codified at K.S.A. 74-20a01) did not address the classification of KHP members until 1963. Before then, a statute in the KCSA, K.S.A. 75-2935, placed all members of the KHP within the unclassified service. L. 1941, ch. 358, § 11. In 1963, the Legislature amended K.S.A. 75-2935 to delete the provision placing all KHP personnel in the unclassified service. L. 1963, ch. 400, § 3.

That same year, the Legislature also amended K.S.A. 74-2113 to address the classification of KHP personnel. We quote the statutory amendments below, using bold text to signify any language added by the amendments and strikethrough text to signify any language deleted by the amendments, as we will do throughout this opinion:

> "There is hereby created a Kansas highway patrol. The patrol shall consist of one (1) superintendent, who shall have the rank of colonel, and who shall have special training and qualifications for such position, and if he was a member of the patrol at the time of his selection as superintendent, he shall, upon termination of his term as superintendent, be returned to a rank not lower than the rank he held at the time of his appointment as superintendent, and if said rank be filled at that time, a temporary additional position shall be created in such rank until such time as a vacancy exists in such rank; one (1) assistant superintendent, who shall have the rank of lieutenant colonel; and not more than two hundred (200) officers and troopers: *Provided*, **The superintendent shall be within the unclassified service while the assistant superintendent and all other officers, troopers, and employees shall be within the classified service of the Kansas state civil service**." L. 1963, ch. 400, § 1.

Thus, when the Legislature originally amended K.S.A. 74-2113 to address the classification of KHP personnel, it established the classification of all three personnel groups in a single sentence.

21

In 1982, the Legislature reorganized K.S.A. 74-2113. In this reorganization, the Legislature split the sentence addressing the classification of KHP personnel groups into two, separate sentences—one addressing the classification of the superintendent and the other addressing the classification of the assistant superintendent and all other KHP officers, troopers, and employees. Then, the Legislature moved the language addressing a superintendent's right to return to a former rank, placing this text between the two sentences addressing the classification of KHP personnel:

> "(a) There is hereby created a Kansas highway patrol. The patrol shall consist of: (1) A superintendent, who shall have the rank of colonel, and who shall have special training and qualifications for such position, and if the person appointed as superintendent was a member of the patrol at the time of appointment as superintendent, such person shall, upon termination of the term as superintendent, be returned to a rank not lower than the rank such person held at the time of appointment as superintendent, and if said rank be filled at that time, a temporary additional position shall be created in such rank until such time as a vacancy exists in such rank; (2) an assistant superintendent, who shall have the rank of lieutenant colonel; and (3) officers and troopers who are appointed in accordance with appropriation acts and as provided in this section. The superintendent shall be within the unclassified service under the Kansas civil service act and. **If a person appointed as superintendent is a member of the patrol when appointed, such person, upon termination of the term as superintendent, shall be returned to a rank not lower than the rank such person held when appointed as superintendent. If such rank is filled at that time, a temporary additional position shall be created in such rank until a vacancy occurs in such rank.** The assistant superintendent and all other officers, troopers and employees shall be within the classified service under the Kansas state civil service." L. 1982, ch. 347, § 32.

The 1982 amendment reorganized the statute but did not change the substantive meaning of its provisions. And the reorganization was logical. As amended, the statute first identified the three categories of KHP personnel comprising the agency before then

22

describing the classification of each personnel category and any other employment protections offered to certain KHP positions.

In short, the legislative history from 1963 to 1982 confirms the statute originally addressed the classification of all three KHP personnel categories in a single sentence. But as part of the 1982 reorganization, the Legislature created a textual gap between the language addressing the classification of the KHP superintendent and the language classifying the remaining KHP personnel categories. But because the 1982 amendment made no substantive changes, we presume the Legislature intended the two classification sentences continue to be read together. See *Board of Education of U.S.D. 512 v. Vic Regnier Builders, Inc*., 231 Kan. 731, 736, 648 P.2d 1143 (1982) (Ordinarily courts presume statutory amendments change the intended effect of the statute, but this presumption has "little force in the case of amendments adopted in a general revision or codification of the law."). This bolsters our conclusion that the phrase "[a]ll other officers, troopers and employees" in the seventh sentence of K.S.A. 74-2113(a) is intended to be read along with the third sentence ("[t]he superintendent and assistant superintendent shall be within the unclassified service"). So construed, K.S.A. 74-2113 places KHP majors within the group of "[a]ll other officers, troopers and employees" within the classified service.

### b.   *1991 Amendment to K.S.A. 74-2113*

More support for our statutory construction can be found in the 1991 amendments to K.S.A. 74-2113. Those amendments moved the assistant superintendent—a position that had been in the classified service since 1963—into the unclassified service. In doing so, the Legislature made several changes to the statutory language addressing the assistant superintendent position:

23

"(a) There is hereby created a Kansas highway patrol. The patrol shall consist of: (1) A superintendent, who shall have the rank of colonel and who shall have special training and qualifications for such position; (2) an assistant superintendent, who shall have the rank of lieutenant colonel; and (3) officers and troopers who are appointed in accordance with appropriation acts and as provided in this section. The superintendent **and assistant superintendent** shall be within the unclassified service under the Kansas civil service act. **The assistant superintendent serving on the effective date of this act shall be appointed to such position by the superintendent. Thereafter, the assistant superintendent shall be appointed by the superintendent from among the members of the patrol, and shall serve at the pleasure of the superintendent.** If a person appointed as superintendent **or assistant superintendent** is a member of the patrol when appointed, such person **in each case**, upon termination of the term as superintendent **or assistant superintendent, respectively**, shall be returned to a rank not lower than the rank such person held when appointed as superintendent **or assistant superintendent**. If such rank is filled at that time, a temporary additional position shall be created in such rank until a vacancy occurs in such rank. ~~The assistant superintendent and~~ All other officers, troopers and employees shall be within the classified service under the Kansas ~~state~~ civil service **act**.

"(b) The superintendent of the patrol shall be appointed by the governor, subject to confirmation by the senate as provided in K.S.A. 75-4315b, and amendments thereto, and shall receive an annual salary fixed by the governor. **The assistant superintendent shall receive an annual salary fixed by the superintendent and approved by the governor**.

"(c) All other members of the patrol shall be appointed by the superintendent in accordance with appropriation acts and with the Kansas civil service act." L. 1991, ch. 234, § 1.

The 1991 amendments confirm the Legislature knows what statutory changes it needs to make to expressly place a KHP position within the unclassified service rather than the classified service. Yet K.S.A. 74-2113(a) contains no such language placing the rank of major within the unclassified service. We assume the Legislature's omission was

24

purposeful and reflects its intent to define the rank of major as within the classified service. See *City of Shawnee v. Adem*, 314 Kan. 12, 18, 494 P.3d 134 (2021) (where Legislature has shown it knows how to express its intent when new provisions are to be considered part of Kansas Code of Criminal Procedure, the omission of such language in subsequent legislative enactments assumed to be deliberate and to reflect the intent of the Legislature); *Zimmerman v. Board of Wabaunsee County Comm'rs,* 289 Kan. 926, 974, 218 P.3d 400 (2009) (where Legislature showed through statutory language it knows how to preempt the Kansas Corporation Commission, its failure to include similar language in another statute strongly suggests preemption was not intended).

### c. 2018 Amendments

To support their respective positions, both parties refer to the 2018 amendments to K.S.A. 74-2113, which modified the statute as follows:

"(a) There is hereby created a Kansas highway patrol. The patrol shall consist of: (1) A superintendent, who shall have the rank of colonel and who shall have special training and qualifications for ~~such~~ **the** position; (2) an assistant superintendent, who shall have the rank of lieutenant colonel; and (3) officers and troopers who are appointed in accordance with appropriation acts and as provided in this section. The superintendent and assistant superintendent shall be within the unclassified service under the Kansas civil service act. ~~The assistant superintendent serving on the effective date of this act shall be appointed to such position by the superintendent. Thereafter,~~ The assistant superintendent shall be appointed by the superintendent from among the members of the patrol, and shall serve at the pleasure of the superintendent. If a person appointed as superintendent ~~or~~ **,** assistant superintendent **or major** is a member of the patrol when appointed, ~~such~~ **the** person in each case, upon termination of the term as superintendent ~~or~~ **,** assistant superintendent **or major**, respectively, shall be returned to a rank not lower than the rank ~~such~~ **the** person held when appointed as superintendent ~~or~~ **,** assistant superintendent **or major**. If ~~such~~ **the** rank is filled at that time, a temporary additional

25

position shall be created in such **the** rank until a vacancy occurs in such rank. All other officers, troopers and employees shall be within the classified service under the Kansas civil service act." L. 2018, ch. 18, § 1.

The 2018 amendments made no change to the statutory provisions placing KHP personnel categories within the unclassified or classified services. But the amendments added majors to the list of personnel who "shall be returned to a rank not lower than the rank the person held when appointed." The only other KHP positions entitled to the same employment protection are the superintendent and the assistant superintendent positions, both of which are within the unclassified service.

While the parties agree the impetus behind the 2018 amendments was the KHP's implementation of a new career progression plan in 2016, they disagree about the ultimate purpose and effect of the amendments. Defendants claim Bruce, who was the KHP superintendent in 2016, used his authority under K.S.A. 75-2935(1)(x) and (1)(cc) to declassify the rank of major through the new career progression plan. See K.S.A. 75-2935(1)(x) (appointing authority may designate persons in newly hired positions as within the unclassified service); K.S.A. 75-2935(1)(cc) (subject to several exceptions, appointing authority may convert any vacant position within the classified service into an unclassified position). According to Defendants, the Legislature merely acknowledged the KHP's declassification of the rank of major by enacting the 2018 amendments and extending to majors the right to return to a former rank.

In contrast, Bruce claims KHP's new career progression plan merely allowed majors to voluntarily move to unclassified positions to obtain pay increases, and the Legislature intended the 2018 amendments to provide protections to majors who exercised that option. He also asserts neither he, as the appointing authority, nor the Legislature could have declassified the rank of major without violating the due process rights of the KHP personnel currently in those positions. See *Darling*, 245 Kan. at 49

26

("'While the legislature may elect not to confer a property interest in [public] employment, it may not constitutionally authorize the deprivation of such an interest, once conferred, without appropriate procedural safeguards.'").

Both parties spend considerable time and effort debating the changes wrought by the KHP's 2016 career progression plan and Bruce's authority to make those changes. But these arguments are, for the most part, beyond the scope of the certified question. Whether Bruce declassified the rank of major while he was KHP superintendent is a mixed question of fact and law outside the scope of this court's jurisdiction in answering the certified question. See *Hays*, 298 Kan. at 404. Whether Bruce could declassify the rank of major under K.S.A. 75-2935 and whether he could exercise such authority without violating constitutional due process protections are questions of law that likewise fall beyond the scope of the certified question. See *Kansas Judicial Review v. Stout*, 287 Kan. 450, 454, 196 P.3d 1162 (2008) (scope of jurisdictional review limited to the contours of the certified questions themselves). And as much as the latter question implicates federal due process rights of KHP personnel, rather than questions of state law, it is not appropriate for us to address such an inquiry under K.S.A. 60-3201. See *Winnebago*, 283 Kan. at 72-73 (certification statute designed to allow Kansas Supreme Court to answer question of state law; purpose of act not served by addressing federal constitutional question).

Even so, the legislative history behind the 2018 amendments is informative. This history bolsters the conclusion that the Legislature intended to extend to KHP majors the right to return to a former rank, rather than to declassify the rank of major altogether. The 2018 amendments were originally introduced as S.B. 84 in January 2017. Sen. Journal, p. 73 (January 25, 2017); S.B. 84 (2017). Then-Superintendent Bruce testified in support of S.B. 84 before the Senate Committee on Federal and State Affairs:

27

"*This bill allows for Officers and Troopers, that have been appointed to the rank of Major, be afforded the same deference that is currently allowed for Superintendent and Assistant Superintendent* within the Kansas Highway Patrol.

"As it states in current law, if a person is appointed as Superintendent or Assistant Superintendent, the person in each case, upon termination of that appointment, shall be returned to a rank of not lower than the rank the person held prior to the appointment. In 2015, the Legislature approved a Competitive Comprehensive Pay Plan specifically for the uniformed members of the Kansas Highway Patrol, which has significantly improved the Agency's hiring and retention concerns. During plan implementation, an unintended consequence was discovered that forced the rank of Major into unclassified service. Furthermore, *the rank of Major no longer met any of the provisions set forth in statute nor any of the protections provided in classified service. Consequently, the individual holding this rank could be relegated back to the position of Trooper or even termination from the Agency upon the appointment of a new Superintendent.* This revelation was not anticipated nor intended to create such a scenario for those eligible to attain the rank of Major.

"The implementation of the Comprehensive Pay Plan has had a tremendous positive impact on the Patrol in a variety of ways and will no doubt sustain our efforts into the future. This change to the statute will provide clarity for the rank of Major, maintaining the Patrol's ability to attract and make qualified appointments, as well as bring in line the provisions already in place for the unclassified positions for Superintendent and Assistant Superintendent." (Emphases added.) Hearing on S.B. 84 Before the Kansas Senate Committee on Federal and State Affairs (January 31, 2017) (testimony of Mark Bruce).

S.B. 84 was eventually struck from the Senate calendar, but the same bill was introduced as S.B. 369. Sen. Journal, p. 1483 (January 11, 2018); Sen. Journal, p. 1537 (February 5, 2018); Supplemental Note on Senate Bill No. 369 (2018), p. 1; S.B. 369 (2018). Then-Superintendent Bruce provided the following testimony in support of S.B. 369 before both the Senate and House Committees for Federal and State Affairs:

28

"*The purpose of this bill is to restore civil service protection to the 4 majors within the KHP that lost it as an unintended consequence of our Career Progression Plan that was implemented in 2016.* This plan accomplished two things for the Patrol. First, it increased pay for the purposes of increasing the number of applicants applying to become new troopers. Second, it corrected a compaction issue regarding the pay of our supervisors.

"Development of the Career Progression Plan (CPP) unintentionally required the highest ranking classified members of the Patrol, our majors, to become unclassified employees, in order to be placed at the appropriate spot on the CPP.

"*Moving the majors to the unclassified service made them the only at-will uniformed members in the trooper ranks. They can be transferred, demoted or fired without cause.* These individuals are career members of the Patrol who were hired on as troopers and earned promotions through the ranks and to their current position.

"Leaving the majors in the unclassified service will have a negative impact on the Patrol's ability to attract the most qualified people to apply for this position. Eligibility for promotion to major, by KHP policy is limited to captains. We generally have 18-20 members serving at that level. They are several years into their career and many won't apply for a major's vacancy because they don't want to move. The remaining number of potential candidates will be reduced by the requirement to leave classified service in order to be promoted.

"*The assistant superintendent and myself are in the unclassified service. However, at the end of our appointments, state law requires that we go back no further in rank than the last permanent position we held. In fairness to our majors and in the best interests of the Patrol, I am requesting that their position be afforded the same, earned protection.*" (Emphases added.) Hearing on S.B. 369 Before the Kansas Senate Committee on Federal and State Affairs (February 12, 2018) (testimony of Mark Bruce); Hearing on S.B. 369 Before the Kansas House Committee on Federal and State Affairs (March 14, 2018) (testimony of Mark Bruce).

Bruce's testimony reveals the purpose of the 2018 amendments was not to change the statutory classification of majors under the KCSA. In fact, Bruce's testimony presumes that before S.B. 369 was even introduced, some KHP majors had been moved from the classified service to the unclassified service because of their participation in the career progression plan. Whether Bruce's assumption (that KHP majors lost their classified status by voluntarily participating in the career progression plan) is factually accurate is beyond the scope of our review. But his testimony helps explain the purpose of the legislation. Rather than addressing classification of personnel under the KCSA, the 2018 amendment simply extended to all KHP majors the employment protection already granted to the superintendent and assistant superintendent—the right to return to their former position. This conclusion is bolstered by the fact the 2018 amendments to K.S.A. 74-2113 made no change to the provisions in subsection (a) that address the classification of personnel groups under the KCSA (the third and seventh sentence).

Likewise, the Revisor's memorandum to the chair and members of the House Committee on Federal and State Affairs on S.B. 369 states the purpose of the bill was to grant majors the same right to return to a former rank already granted to the superintendent and assistant superintendent:

> "Senate Bill No. 369 (SB 369) amends K.S.A. 74-2113 regarding officers of the Kansas Highway Patrol (KHP). Members of the KHP are appointed to certain officer ranks and lose such rank when the term of the appointment ends. Under current law, at the end of the appointment term any person who is appointed to the rank of superintendent or assistant superintendent cannot be reduced in rank below such person's rank prior to appointment as superintendent or assistant superintendent.
>
> "*SB 369 would add the rank of major to the list of appointed officers that cannot be reduced in rank below such officer's rank prior to appointment*." (Emphasis added.) Hearing on S.B. 369 Before the Kansas House Committee on Federal and State Affairs (March 14, 2018) (memorandum of Jason Long).

30

S.B. 369 passed both the Senate and House unanimously. Sen. Journal, p. 1616 (February 21, 2018); House Journal, p. 2540 (March 19, 2018).

Again, whether the KHP's career progression plan declassified the rank of major is a mixed question of fact and law beyond the scope of this court's review. Consistent with the certification order, we are concerned only with determining whether K.S.A. 74-2113 places majors within the classified service. And the history shows the Legislature did not enact the 2018 amendments to define the rank of major within the unclassified service. Rather, the purpose of the 2018 amendments was to "add the rank of major to the list of appointed officers that cannot be reduced in rank below such officer's rank prior to appointment."

> 3. *Construing K.S.A. 74-2113(a) to Place Majors Within the Classified Service Does Not Render the 2018 Amendments Superfluous*

According to Defendants, if K.S.A. 74-2113 defines majors within the classified service, then the employment protections granted to KHP majors under the 2018 amendments "would be superfluous and meaningless . . . because classified employees already have [these] protections under the civil service act." Thus, even though K.S.A. 74-2113 does not expressly place majors within the unclassified service, Defendants contend the statute must be read that way to give meaning to the 2018 amendments. See *Stanley v. Sullivan*, 300 Kan. 1015, 1021, 336 P.3d 870 (2014) (courts presume Legislature does not intend to enact superfluous or redundant legislation).

But the 2018 amendments to K.S.A. 74-2113 would be superfluous only if they granted KHP majors redundant employment protections—protections permanent classified employees already possessed under the KCSA. Our review of the KCSA and its implementing regulations confirm this is not the case.

31

Under the KCSA's statutory framework, an appointing authority may not dismiss, demote, or suspend a permanent classified employee without legitimate cause. See *Prager v. Kansas Dept. of Revenue*, 271 Kan. 1, 40, 20 P.3d 39 (2001); see also K.S.A. 75-2949d(a) (deficiencies in work performance or conduct grounds for dismissal, demotion, or suspension); K.S.A. 75-2949(a) (no permanent classified employee may be dismissed, demoted, or suspended for political, religious, racial, or other nonmerit reasons). But the KCSA does not compel or limit the type of discipline the appointing authority may impose when it has good cause to take adverse employment action. More specifically, the KCSA does not compel the agency to return KHP majors to their former positions rather than terminate their employment.

The KCSA offers some protection to certain permanent classified employees who are promoted to a higher position, but this protection is limited temporally and inapplicable to Bruce. When an employee with permanent status in the classified service is promoted with probationary status to a higher position and then dismissed without cause during or at the end of the probationary period, K.S.A. 75-2944(b) requires that the employee be "demoted with permanent status to a position in the class from which the employee was promoted, or to a position in another class in the same salary range." The statute essentially grants eligible employees the right to demotion instead of discharge. But it protects only those employees promoted within the classified service, and the right to demotion expires after the probationary period ends. Thus, this statutory protection would not apply to Bruce, who was appointed to a position in the unclassified service without a probationary period. Nor would it apply more generally to employees appointed to the rank of major after they complete a probationary period in that rank.

And K.S.A. 75-2947(c) gives appointing authorities discretion to grant a leave of absence "to an officer or employee holding a regular position in the classified service to enable such person to take an appointive position in the state unclassified service." The administrative regulation implementing this statutory provision provides:

"Any employee with permanent status may be granted leave of absence without pay from the employee's classified position to enable the employee to take a position in the unclassified service, if the granting of this leave is considered by the appointing authority to be in the best interest of the service. Leave for this purpose shall not exceed one year, but the appointing authority may grant one or more extensions of up to one year, and the appointing authority may determine the number of extensions." K.A.R. 1-9-6(e).

The statute does not specifically address what happens to these employees once their term in the unclassified service ends. But one could infer from these provisions that the employee's leave would end, and the employee would return to their former position in the classified service. Even if this were the proper statutory construction, the employee must first request a leave of absence to take a position in the unclassified service. And the appointing authority is granted discretion whether to approve such a request. Further, the leave of absence cannot exceed one year. While the employee may request an extension, the appointing authority is again granted discretion whether to approve an extension.

Quite simply, when an employee's term in the unclassified service is terminated, the KCSA does not *compel* an appointing authority to return that employee to his or her former position in the classified service. But in the 2018 amendments to K.S.A. 74-2113, the Legislature granted this very employment protection to KHP majors. But for the 2018 amendments, permanent employees within the classified service possessed no such right under the KCSA. Thus, construing K.S.A. 74-2113(a) to define the rank of major within the classified service does not render the 2018 amendments superfluous.

In sum, the plain language of K.S.A. 74-2113(a) places KHP majors within the classified service. But even if the statute's plain language did not compel this conclusion, traditional canons of statutory construction and the legislative history would. Thus, in answering the first certified question, we hold K.S.A. 74-2113 defines the rank of major within the classified service.

III. *Certified Question 2: If K.S.A. 74-2113 Defines the Rank of Major in the KHP as a Member of the Classified Service, Does K.A.R. 1-7-4 (2021 Supp.) Require a Former Member of the Classified Service—Who Already Has Completed a Required Probationary Period for the Classified Service—to Serve Another Six-month Probationary Period in the Classified Service After Serving as a Member of the Unclassified Service?*

Because we hold K.S.A. 74-2113 places KHP majors within the classified service, we must address the second certified question. That question contemplates a scenario in which an employee earns permanent status in the classified service by successfully completing a probationary period, then serves for a period as a member of the unclassified service, and afterwards returns to the classified service. The United States District Court asks whether K.A.R. 1-7-4 (2021 Supp.) requires that employee to serve another six-month probationary period.

To respond to this inquiry, we first determine the intended scope of the second question. Then, we analyze the probationary period requirements in the KCSA. Finally, we respond to the merits of the certified question and hold that K.A.R. 1-7-4 (2021 Supp.) does not require a former KHP superintendent or assistant superintendent to serve another probationary period upon returning to their former rank in the classified service, as contemplated in K.S.A. 74-2113(a).

34

A. *The Scope of Our Review Is Limited to K.A.R. 1-7-4's Application to KHP Personnel*

The second certified question asks whether employees returning to the classified service from the unclassified service must serve another period of probation. But the question's wording does not expressly limit its scope to KHP employees. One could interpret the question broadly as an invitation to address the application of K.A.R. 1-7-4 (2021 Supp.) to any employee in the state service, regardless of the employing agency.

That said, the language within the certification order and the surrounding context of the litigation suggest the United States District Court intended the second certified question to address the application of K.A.R. 1-7-4 (2021 Supp.) to KHP personnel. First, the federal district court made clear we need only respond to the second question if we conclude, in response to the first certified question, that K.S.A. 74-2113 places KHP majors within the classified service. Second, this lawsuit involves a dispute over employment in the KHP. Third, in the certification order, the United States District Court questioned only how K.A.R. 1-7-4 (2021 Supp.) would apply to Bruce's situation—that is, an employee returning to the rank of major after serving as KHP superintendent. See *Resolution Trust Corp. v. Scaletty*, 257 Kan. 348, 350, 891 P.2d 1110 (1995) (finding issue was outside the scope of certified question based on federal court's discussion of the question in certification order). Fourth, as noted, K.S.A. 74-2113 addresses the employment of KHP personnel in the state service and must be read together with the KCSA. Finally, the parties agreed at oral argument the scope of our review should be limited to KHP employees. Thus, our response addresses the application of K.A.R. 1-7-4 (2021 Supp.) to KHP employees similarly situated to Bruce.

35

*B. The KCSA's Probationary Period Requirement*

The KCSA provides "all appointments within the classified service shall be for a probationary period" unless "otherwise provided in the Kansas civil service act or by rules and regulations adopted thereunder." K.S.A. 75-2946. The probationary period serves "as a working test of the employee's ability to perform adequately in the position to which the employee was hired." K.A.R. 1-7-3(a) (2021 Supp.). Probationary employees are generally at-will employees and "may be dismissed . . . at any time during the probationary period." K.A.R. 1-7-3(d) (2021 Supp.). But see K.S.A. 75-2944(b) (providing right to demotion to prior job class in some cases for employees with permanent status serving probationary period because of promotion). It is only after the successful completion of a probationary period that an employee earns permanent status and the concomitant employment protections granted to classified personnel under the KCSA.

K.A.R. 1-7-4 (2021 Supp.) sets out the probationary period requirements for employees in various circumstances. The regulation exempts several types of employees from serving a probationary period at all. See K.A.R. 1-7-4(c) (2021 Supp.) (person rehired on basis of reemployment has permanent status from date of rehire); K.A.R. 1-7-4(f) (2021 Supp.) (employee with permanent status who is transferred retains permanent status); K.A.R. 1-7-4(i) (2021 Supp.) (temporary employees not subject to probationary period). But generally, most employees appointed to a classified position are required to serve a probationary period ranging from three to six months. See, e.g., K.A.R. 1-7-4(a) (2021 Supp.) (new hires and rehires on basis other than reemployment or reinstatement subject to six-month probationary period); K.A.R. 1-7-4(b) (2021 Supp.) (employee who is promoted subject to probationary period of three to six months); K.A.R. 1-7-4(d) (2021 Supp.) (person rehired on basis of reinstatement subject to probationary period of three to six months). More specifically, "employee[s] who [are] transferred, demoted, or

36

promoted from any position in the unclassified service to a regular position in the classified service shall serve a probationary period of six months." K.A.R. 1-7-4(h) (2021 Supp.).

C. *K.A.R. 1-7-4 (2021 Supp.) Does Not Require KHP Superintendents or Assistant Superintendents Returning to Their Former Rank Under K.S.A. 74-2113(a) to Serve a New Probationary Period*

Not surprisingly, the parties not only disagree on whether K.A.R. 1-7-4 (2021 Supp.) applies to someone in Bruce's situation, but they also disagree on which subsection of the regulation is most applicable. Bruce argues K.S.A. 74-2113's directive that he be "returned" to his former rank means he would go back to the rank of major with permanent status in the classified service. And he contends an administrative regulation cannot validly require him to serve another six-month probationary period when a statute requires a return to his former position with permanent status. See *In re Tax Appeal of City of Wichita*, 277 Kan. 487, 495, 86 P.3d 513 (2004) ("To be valid, rules or regulations of an administrative agency . . . must be appropriate, reasonable, and not inconsistent with the law."). Finally, Bruce asserts that if he were returned to his former rank of major, he would have been "rehired on the basis of reemployment" and would have been exempt from serving a probationary period under K.A.R. 1-7-4(c) (2021 Supp.) anyway.

Defendants argue K.S.A. 75-2946 and K.A.R. 1-7-4(h) (2021 Supp.) generally require *any* person appointed to the classified service, after serving in the unclassified service, to complete a six-month probationary period. But see K.A.R. 1-9-6(e) (employee with permanent status may be granted leave of absence without pay from classified position to take position in unclassified service). They also contend K.S.A. 74-2113(a) requires certain KHP personnel be returned to their former rank, but the statute does not guarantee a return to a specific position with permanent status. Thus, someone in Bruce's

37

situation would still need to serve a six-month probationary period under K.A.R. 1-7-4(h) (2021 Supp.). Finally, Defendants argue K.A.R. 1-7-4(c) (2021 Supp.) is inapplicable to Bruce's situation.

Defendants are correct in suggesting K.A.R. 1-7-4(c) (2021 Supp.) would not apply to Bruce. That provision exempts employees who have been "rehired on the basis of reemployment" from serving a probationary period. K.A.R. 1-7-4(c) (2021 Supp.). An employee "rehired on the basis of reemployment" refers to a process in which employees who have been laid off from the classified service are automatically placed in a pool of like persons eligible to apply for any vacancy. See K.S.A. 75-2948 (describing layoff procedures); K.A.R. 1-6-23 (2021 Supp.) (describing reemployment procedures). Since Bruce was never laid off from the classified service, K.A.R. 1-7-4(c) (2021 Supp.) is simply inapplicable.

That leaves K.A.R. 1-7-4(h) (2021 Supp.) as the only provision potentially applicable to Bruce's situation. This regulatory provision requires employees who are transferred, demoted, or promoted from the unclassified service to a regular position in the classified service to serve a six-month probationary period. But Bruce notes K.S.A. 74-2113(a) also makes clear that certain eligible KHP personnel "shall be returned to a rank not lower than the rank the person held when appointed as superintendent, assistant superintendent or major." The pivotal inquiry is whether the exercise of this statutory right triggers the probationary period contemplated in K.A.R. 1-7-4(h) (2021 Supp.).

To answer the second certified question, we first interpret the meaning and scope of the right to be "returned" to former rank under K.S.A. 74-2113(a). Once properly construed, we then analyze the statute along with K.A.R. 1-7-4(h) (2021 Supp.). Ultimately, we hold that K.A.R. 1-7-4(h) does not require a KHP superintendent or

38

assistant superintendent returning to their former rank under K.S.A. 74-2113(a) (2021 Supp.) to serve a new (or second) probationary period.

### 1. *K.S.A. 74-2113 Requires KHP Superintendents and Assistant Superintendents Be Returned to the Same Position, Status, and Condition of Employment Held at the Time of Appointment*

We begin by interpreting the statute to determine the meaning of the "return to former rank" provision. The relevant statutory language provides:

"If a person appointed as superintendent, assistant superintendent or major is a member of the patrol when appointed, the person in each case, upon termination of the term as superintendent, assistant superintendent or major, respectively, shall be *returned* to a *rank* not lower than the rank the person held when appointed as superintendent, assistant superintendent or major." (Emphases added.) K.S.A. 74-2113(a).

Neither the word "returned" nor "rank" is defined by any statute or administrative regulation. Without those definitions, we construe these words according to their context, giving words in common use their ordinary meaning. *State v. Sandoval*, 308 Kan. 960, 963, 425 P.3d 365 (2018); *O'Donoghue v. Farm Bureau Mut. Ins. Co.*, 275 Kan. 430, 433, 66 P.3d 822 (2003).

As Bruce points out, the ordinary meaning of "return" is "to go back to where one was." See, e.g., Webster's New World College Dictionary 1242 (5th ed. 2016) (defining "return" as "to go or come back, as to a former place, condition, practice, opinion, etc."); Merriam-Webster Online Dictionary, http://www.merriam-webster.com/dictionary/return (defining "return" as "to go back or come back again" or "to go back in thought, practice, or condition"); see also *Midwest Crane & Rigging, LLC v. Kansas Corporation Comm'n*, 306 Kan. 845, 851, 397 P.3d 1205 (2017) (recognizing dictionary definitions are a good

source for the ordinary meaning of words). The ordinary meaning of "return" suggests eligible KHP members must revert to the very position and classification status they held before being appointed to superintendent, assistant superintendent, or major.

As for the word "rank," its ordinary meaning is "official position or standing." See Black's Law Dictionary 1511 (11th ed. 2019) (defining "rank" as "[a] social or official position or standing, as in the armed forces"). But as used in K.S.A. 74-2113(a), "rank" also corresponds to a "position" in state service. See K.A.R. 1-2-59 ("position" is "a group of duties and responsibilities, assigned or delegated by an appointing authority, requiring the services of an employee on a full-time basis or, in some cases, on a less than full-time basis"). This construction is supported within K.S.A. 74-2113(a) itself. The sixth sentence of subsection (a) states, "If the *rank* [to which a KHP member is to be returned] is filled at that time, a temporary additional *position* shall be created." (Emphases added.) K.S.A. 74-2113(a). This language conveys an equivalency between "rank" and "position," at least within the KHP.

Based on the ordinary meaning of these terms, K.S.A. 74-2113(a) requires KHP superintendents, assistant superintendents, and majors be "returned" to the position and classification status the employee had attained before being appointed as superintendent, assistant superintendent, or major. For someone who had achieved permanent status at a rank in the classified service before being appointed to superintendent, assistant superintendent, or major that would mean a return to his or her previous rank with permanent status.

But this conclusion does not end our inquiry. Defendants aptly observe that this statutory provision must be construed together with the KCSA and its implementing regulations—specifically K.A.R. 1-7-4(h) (2021 Supp.)'s requirement that any employee transferred, demoted, or promoted from the unclassified service to a regular position in

the classified service serve a six-month probationary period. See K.S.A. 74-2113(c) ("All other members of the patrol shall be appointed by the superintendent in accordance with . . . the Kansas civil service act."). Thus, we move to the second part of our analysis and compare the statute together with the administrative regulation.

### 2. *The Plain Language of K.S.A. 74-2113(a) Controls Over K.A.R. 1-7-4(h) (2021 Supp.)*

As noted in the prior section, the plain language of K.S.A. 74-2113(a) requires that, upon the termination of an employee's term as superintendent, assistant superintendent, or major, the person in each case must be "returned" to the same position and classification status he or she had before the appointment. In reading this statute together with K.A.R. 1-7-4(h) (2021 Supp.), the plain language and defined terms within these provisions render K.A.R. 1-7-4(h) (2021 Supp.) inapplicable. And, alternatively, even if we were to conclude that ambiguity arises when reading the statute and regulation together, the plain language of K.S.A. 74-2113 would control.

First, the plain language of K.S.A. 74-2113, coupled with the defined terms within K.A.R. 1-7-4(h) (2021 Supp.), reveal that the administrative regulation is inapplicable. K.S.A. 74-2113(a) provides that at the end of an employee's term as superintendent, assistant superintendent, or major, that employee "shall be *returned* to a rank not lower than the rank the person held when appointed." (Emphasis added.) In contrast, the regulation requires "[e]ach employee who is *transferred*, *demoted*, or *promoted*" from "unclassified service to a regular position in the classified service" serve a six-month probationary period. (Emphasis added.) K.A.R. 1-7-4(h) (2021 Supp.).

Within the statutory provision, the Legislature did not require that eligible employees be "promoted," "demoted," "transferred," "reemployed," "rehired," or "reinstated" to their former rank—terms that are expressly defined in the KCSA's

41

implementing regulations. Instead, the Legislature chose the word "returned." And, as we established above, the ordinary meaning of "return" signifies that K.S.A. 74-2113 requires eligible KHP members revert to the position and classification status they had attained when appointed as superintendent, assistant superintendent, or major. So if the eligible employee had attained permanent status in the classified service before appointment, then the employee would be "returned" to permanent classified status after the appointment.

This plain meaning construction distinguishes a *return* to former rank from other employment actions contemplated within the KCSA, including promotions, transfers, and demotions triggering the probationary requirements in K.A.R. 1-7-4(h) (2021 Supp.). Under the KCSA, "'[p]romotion' means a change of an employee from a position in one class to a position in another class having a higher pay grade, by an employee who meets the required selection criteria for promotion." K.A.R. 1-2-67. The term "promotion" does not properly describe the employment protection in K.S.A. 74-2113(a) because the right to be "returned" to a former rank does not require the superintendent or assistant superintendent, upon termination of their term, be moved to another position with a higher pay grade. Thus, a "return" to former rank has meaning distinct from the KCSA's definition of a "promotion."

Under the KCSA, "'[t]ransfer' means a change by an employee from one position to another position with a close similarity of duties, essentially the same basic qualifications, and the same pay grade." K.A.R. 1-2-88. The term "transfer" also fails to properly describe the statutory employment protection in K.S.A. 74-2113(a) because the right to be "returned" to a former rank does not require the former superintendent or assistant superintendent be changed to another position with close similarity of duties, qualifications, and pay. Thus, a "return" to former rank has meaning distinct from the KCSA's definition of a "transfer."

42

Finally, under the KCSA, "'[d]emotion' means the movement of an employee from a position in one class to a position in another class having a lower pay grade, either on an involuntary basis for disciplinary purposes or on a voluntary basis." K.A.R. 1-2-31. The term "demotion" comes the closest of all the defined terms in K.A.R. 1-7-4(h) (2021 Supp.) to describing the employment protection provided under the statute. But because the superintendent and assistant superintendent are within the unclassified service, they serve at the pleasure of the appointing authority who can terminate the employment relationship with or without cause. Thus, an appointing authority is free to involuntarily terminate the term of a superintendent or assistant superintendent (triggering that employee's statutory right to be returned to former rank) for reasons other than "disciplinary purposes." And if a superintendent or assistant superintendent is "returned" to their former rank under those circumstances (involuntary termination without cause), that employment action would not be a "demotion" as defined in the KCSA. Thus, a "return" to former rank has meaning distinct from the KCSA definition of "demotion."

This analysis confirms the word "return" in K.S.A. 74-2113(a) has unique meaning distinct from other employment actions contemplated within the KCSA. The probationary period contemplated in K.A.R. 1-7-4(h) (2021 Supp.) applies when an employee is "transferred, demoted, or promoted" from a position in the unclassified service to a regular position in the classified service. But the plain language reading of the statute confirms that a "return" to former position contemplates an employment action distinct from a promotion, transfer, or demotion. Thus, K.A.R. 1-7-4(h) (2021 Supp.) is inapplicable. And this regulation does not require KHP superintendents or assistant superintendents to serve a six-month probationary period upon their return to a former position as contemplated in K.S.A. 74-2113(a).

Second, even if one could reasonably conclude that reading K.S.A. 74-2113(a) together with K.A.R. 1-7-4(h) (2021 Supp.) creates ambiguity, traditional rules of statutory construction bolster our plain language interpretation. "Statutory provisions that are clear when read separately may become ambiguous when read together." *Hays*, 298 Kan. at 406. In that case, we may resort to canons of construction, legislative history, or other background considerations to determine legislative intent. *Martin v. Naik*, 297 Kan. 241, 258, 300 P.3d 625 (2013). When addressing potential ambiguity between statutory provisions, the court must continue to read the provisions *in pari materia* and seek to bring them into harmony, if possible. *State ex rel. Secretary of DCF v. Smith*, 306 Kan. 40, 57, 392 P.3d 68 (2017).

The legislative history of the 2018 amendments to K.S.A. 74-2113(a) favors our plain language construction that the statutory right to be "returned" to a former rank does not require a new probationary period for former superintendents and assistant superintendents. As noted in our response to the first certified question, the history confirms that the purpose of the 2018 amendments was to protect the continued employment of KHP majors and prevent them from being discharged from the agency when their term in that rank ends. It accomplished this aim by extending to majors the same employment protection already granted to superintendents and assistant superintendents.

Defendants' construction would thwart the employment protections granted by the statute and the 2018 amendments specifically. See *Milano's Inc. v. Kansas Dept. of Labor*, 296 Kan. 497, 501, 293 P.3d 707 (2013) (if statute's language subject to multiple interpretations, courts may consider statute's purpose and statute's effect under suggested constructions). If KHP superintendents or assistant superintendents had to serve a probationary period upon their return to classified service, K.S.A. 74-2113(a) would ostensibly require that these employees be placed in their former ranks with probationary

44

status. Once returned to their former positions with probationary status, the appointing authority would be free to discharge them for any reason or no reason. K.S.A. 75-2946. Rather than providing any genuine employment protection, K.S.A. 74-2113(a) would simply require the appointing authority perform a perfunctory step (a return to probationary status) before dismissal. And if *that* perfunctory requirement were not met, former KHP superintendents, assistant superintendents, and majors would have no viable recourse at law because they would have no property interest in continued employment as at-will, probationary employees. See *Moorhouse*, 259 Kan. at 580 (at-will employees have no property interest in continued employment).

Defendants' construction would also fail to give meaning to other provisions within K.S.A. 74-2113(a). The fifth sentence of subsection (a) establishes the right to be "returned" to former rank. The sixth sentence provides:  "If the rank is filled at that time, a temporary additional position shall be created in the rank until a vacancy occurs in such rank." K.S.A. 74-2113(a). This provision compels the agency to create a new, temporary position for a superintendent, assistant superintendent, or major returning to their former position, if no current vacancy exists. The plain language contemplates a continuing employment relationship between the eligible KHP employee and the agency. But because the appointing authority may fire employees without cause during this probationary period, KHP could discharge eligible employees simply because there are no vacancies in their former positions. Thus, Defendants' interpretation fails to give the sixth sentence its intended meaning and effect.

Further, as much as K.A.R. 1-7-4(h) (2021 Supp.) could be said to conflict with our construction of K.S.A. 74-2113(a), the statutory provision would control for at least two reasons. First, K.A.R. 1-7-4(h) (2021 Supp.) is an administrative regulation. Administrative regulations must follow the law to be valid, and they cannot contravene a controlling statute. *Pemco, Inc. v. Kansas Dept. of Revenue*, 258 Kan. 717, 720, 907 P.2d

45

863 (1995); *Tew v. Topeka Police & Fire Civ. Serv. Comm'n*, 237 Kan. 96, 100, 697 P.2d 1279 (1985). Thus, if K.A.R. 1-7-4(h) (2021 Supp.) conflicts with K.S.A. 74-2113, the regulation must yield to the statute.

Second, when statutory provisions are in conflict, the more specific provision generally prevails. *State ex rel. Schmidt, v. Governor Kelly*, 309 Kan. 887, 898, 441 P.3d 67 (2019). K.A.R. 1-7-4 (2021 Supp.) is a general regulatory provision governing probationary periods for employees of any state agency. In contrast, K.S.A. 74-2113(a) governs employment in the KHP and specifically provides employment protection to the superintendent, assistant superintendent, and majors. So even if we viewed the regulation on the same footing as the statute, K.S.A. 74-2113 would supersede K.A.R. 1-7-4(h) (2021 Supp.) as the more specific provision to the situation at hand.

Thus, in response to the second certified question, we hold that K.A.R. 1-7-4 (2021 Supp.) does not require eligible KHP employees to serve a six-month probationary period when returned to their former rank as contemplated in K.S.A. 74-2113(a).

CONCLUSION

We, therefore, answer the questions certified to us by the United States District Court for the District of Kansas in the following manner: We hold K.S.A. 74-2113 defines the rank of KHP major as within the classified service. And if KHP employees attain permanent status in the classified service before being appointed as superintendent or assistant superintendent in the unclassified service, then K.A.R. 1-7-4 (2021 Supp.) does not require them to serve another probationary period when "returned" to their former rank and classification status under K.S.A. 74-2113(a).

46

* * *

LUCKERT, C.J., concurring: I concur with the holdings reached by the majority. Unlike the majority, however, I would label K.S.A. 74-2113 ambiguous. As the United States District Court determined, K.S.A. 74-2113 "wasn't drafted in a clear and consistent fashion[, and e]ach side of the caption presents a compelling argument why the plain language of the statute favors the competing constructions that each side proposes." *Bruce v. Kelly*, No. 20-4077-DDC-GEB, 2021 WL 4284534, at \*19 (D. Kan. 2021) (unpublished opinion). While I ultimately agree the majority's interpretation of K.S.A. 74-2113 reflects legislative intent, the words of the statute alone do not, in my view, reveal that intent. But digging deeper, and applying what the majority calls the traditional methods of statutory construction, reveals the Legislature intended the statutory meaning set out in the majority opinion.